IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00128-MSK-STV

JARED DENNIS,

      Plaintiff,

v.

JAMIE FITZSIMONS, in his official capacity as Sheriff
of Summit County, Colorado,

      Defendant.

_____

## DEFENDANT'S SUMMARY JUDGMENT MOTION
_____

      **COME NOW** Defendant Jamie FitzSimons ("**Sheriff FitzSimons**" or "**Defendant**"),

who moves for summary judgment on all claims in Plaintiff's Complaint with Demand for Jury

Trial (ECF #1) (the "**Complaint**") pursuant to Fed. R. Civ. P. 56.

## SUMMARY OF BACKGROUND FACTS

      On July 28, 2016, the Summit County Sheriff's Office ("**SCSO**")[1] terminated the

Plaintiff, Jared Dennis ("**Dennis**"), employment as a Detective Sergeant for violating various

provisions of the SCSO's conduct policies. Upon being notified of a criminal arrest warrant for

Dennis on July 27, 2016, the SCSO placed him on paid leave pending an internal investigation

into the circumstances of the criminal charges. A condition of the leave afforded by the SCSO to

Dennis required that he make himself available to the SCSO from 9:00 a.m. to 5:00 p.m. each

weekday, beginning July 28, 2016. Meanwhile, Dennis and the SCSO negotiated for his

_____
[1] Naming Sheriff FitzSimons as the Defendant in this case in his official capacity, the Plaintiff is effectively naming
the SCSO.

surrender at a neighboring county jail in response to the arrest warrant. Dennis showed up in an impaired state at that jail after drinking vodka the night before. This delayed Dennis' ability to be arraigned and made him unavailable to the SCSO, but more critically, it meant that Dennis was intoxicated during his paid leave shift. As a result, the SCSO swiftly terminated Dennis for alcohol related misconduct.

**CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT**

The Complaint sets forth two claims for relief: (1) failure to accommodate and termination on the basis of a disability in violation of the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794 (the "**Rehabilitation Act**"); and (2) failure to accommodate and termination on the basis of a disability in violation of the Americans with Disabilities Act of 1990, as amended by ADA Amendments Act of 2008, 42 U.S.C. § 12101, *et seq.* (the "**ADA**"). As set forth below, Dennis has failed to establish a triable issue of fact on either of these claims, mandating dismissal thereof as a matter of law pursuant to Fed. R. Civ. P. 56.

**A. Dennis Cannot Establish a Prima Facie Case of Discrimination Under Title I of the ADA.**

As more specifically outlined below, the ADA does not prohibit the SCSO's enforcement of its conduct policies for Dennis' alcohol related misconduct, even if Dennis suffered from being an alcoholic. Additionally, Dennis cannot show that the SCSO discriminated against him under the ADA because he never disclosed his suspicions of being an alcoholic and because he never requested a reasonable accommodation until after his termination. The ADA offers no protection for Dennis under these circumstances.

1. <u>Burden of Proof and Elements</u>.

As applicable here, Title I of the ADA prohibits employers from discriminating against individuals on the basis of disability, providing that no covered employer "shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." *See* 42 U.S.C. § 12112(a). Under the framework articulated by the Tenth Circuit, in order establish a prima facie case of disability discrimination under the ADA, a plaintiff bears the burden of demonstrating, by a preponderance of the evidence, the following: (1) that he is a disabled person as defined by the ADA; (2) that he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) that he suffered discrimination by an employer or prospective employer because of that disability. *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 – 38 (10th Cir. 2011). For the purposes of the ADA, discrimination includes "not making reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an [] employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. §12112(b)(5)(A).

If a prima facie case of discrimination can be made, the burden then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *See Dewitt v. Southwestern Bell Tel. Co.*, 845 P.3d 1299, 1307 (10th Cir. 2017) (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the defendant makes such a showing, the burden then shifts back to the plaintiff to "show that there is at least a genuine issue of material fact as to whether the employer's proffered legitimate reason is genuine or pretextual." *Id.*

    2.  <u>Elements that Cannot be Proven By Plaintiff.</u>

As discussed below, Dennis has failed to produce sufficient evidence to prove the necessary elements to establish a prima facie case of discrimination under the ADA. First, Dennis cannot demonstrate a triable issue of fact that he was a "qualified individual," as that term is defined by the ADA. To that end, the undisputed evidence proves that Dennis was terminated for being impaired on the job and for violating various portions of the SCSO's generally applicable code of conduct. Because the ADA exempts an individual who is terminated on that basis from the definition of "qualified individual," *see* 42 U.S.C. §12114(c), Dennis cannot establish the second element of his ADA claim. Second, Dennis's evidence is insufficient to prove the third element of his ADA claim – that Sheriff Fitzsimons or the SCSO discriminated against him because of his disability. Here, Dennis has asserted two theories of discrimination: (1) failure to accommodate; and (2) adverse employment action. Because the undisputed evidence here establishes that Dennis did not disclose to Sheriff Fitzsimons or the SCSO that he was an alcoholic or suffered from alcohol use disorder prior to the decision to terminate him, he cannot prove that he was discriminated against on account of that disability as a matter of law, under either theory of discrimination.

  a. *Element 2: Dennis has failed to produce sufficient evidence to establish that he was a "qualified individual" under the ADA.*

The ADA defines a "qualified individual" as someone who "can perform the essential function of the employment position that such individual holds or desires," with or without reasonable accommodation. 42 U.S.C. §12111(8). Courts in this jurisdiction have imposed a two-part analysis in determining whether a person is a "qualified individual" for purposes of the ADA. *Davidson v. Am. Online*, 337 F.3d 1179, 1190 (10th Cir. 2003). First, a court must determine whether the individual can perform the essential functions of the job. *Id.* Second, it

4

must be determined whether any reasonable accommodation would enable the employee to perform those functions. *Id.* Importantly, however, in the context of an alcohol use disorder, an employer has no "duty to accommodate an alcoholic who is not 'otherwise qualified', i.e. commits an act which standing alone disqualifies him from service and is not entirely a manifestation of alcohol." *Magruder v. Runyon*, 54 F.3d 787 (Table), at *3 (10th Cir. 1995) (unpublished) (holding that employee's conduct, even if caused by her alcoholism, was not protected under the ADA where "actions were so egregious as to render her unqualified for her position").

Cases interpreting these provisions have noted that the ADA clearly contemplates distinguishing misconduct from one's status as an alcoholic, as "it strains logic to conclude that such [egregious or criminal] action could be protected under the Rehabilitation Act or the ADA merely because the actor has been diagnosed as an alcoholic and claims that such action was caused by his disability." *Williams v. Windall*, 79 F.3d 1003, 1007 (10th Cir. 1996) (upholding trial court conclusion that plaintiff failed to satisfy that he was a qualified individual under Rehabilitation Act where dismissal was for misconduct, irrespective of whether it was caused by his handicap of alcoholism).

Further, the ADA expressly permits a covered entity to impose the following standards for qualification on an employee, without implicating the prohibitions of the ADA: (i) prohibit the use of alcohol at the workplace by all employees; (ii) require that employee shall not be under the influence of alcohol at the workplace; and (iii) hold an employee who is an alcoholic "to the same qualification standards for employment and job performance and behavior that such

entity holds other employees, even if unsatisfactory performance or behavior is related to the []
alcoholism of such employee." 42 U.S.C. § 12114(c).

Here, Dennis is unable to establish that he was a "qualified individual" at the time in
question, as it is undisputed that Dennis was: (a) under the influence of alcohol while he was on
the job and expected to be available to the SCSO, and (b) that his conduct on July 28, 2016
violated various provisions of the SCSO code of conduct, applicable to all employees.

*i. The SCSO terminated Dennis for being impaired while he was on
the job and expected to be available to his employer.*

While ADA case law has concluded that an alcoholic is considered a disabled individual
under the ADA, *see Renaud v. Wyo. Dep't of Family Serv.*, 203 F.3d 723, 729 – 30 (10th Cir.
2000), the statute explicitly affords an employer the right to prohibit employees from being
under the influence of alcohol while on the job, irrespective of the employee's status as an
alcoholic. *See* 42 U.S.C. § 12114(c)(2); *see also Renaud*, 203 F.3d at 730 ("ADA protection []
does not extend to an alcoholic's use of alcohol on the job."). Federal regulations implementing
the ADA further confirm that a covered entity may require that employees not be under the
influence of alcohol at the workplace, 29 C.F.R. § 1630.16(b)(2), and that an employer may have
a defense to a charge of discrimination where the alleged discriminatory action is specifically
permitted by 29 C.F.R §§ 1630.16. *See* 29 C.F.R. § 16.30.15(f).

Cases applying these provisions of the ADA addressing factual scenarios involving
employees appearing intoxicated at the workplace or on duty have unequivocally held that an
employer is permitted to discipline an employee for such conduct, including termination.[2] *See*

---

[2] While Dennis has failed to establish that he requested a reasonable accommodation as a matter of law, as discussed
below, cases construing the ADA have further held that the provisions of 42 U.S.C. § 14114(c)(2) permitting

*Flynn v. Raytheon Co.*, 868 F.Supp. 383, 386 – 87 (D. Mass. 1994) ("[w]hile the ADA [] protects an individual's status as an alcoholic, it is clear that a company need not tolerate misconduct such as intoxication on the job"); *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 935 (6th Cir. 2000) ("[t]he ADA does not protect plaintiff from his own bad judgment in drinking on the job").

Dennis does not dispute the factual basis underlying his discipline for alcohol use. To that end, on July 27, 2018, after being made aware that Dennis was the subject of an arrest warrant in the neighboring jurisdiction of Park County, the SCSO placed Dennis on paid leave, pending completion of an internal investigation into allegations of Dennis' off-duty misconduct. (*See* July 27, 2016 correspondence to Plaintiff from Commander Mumford attached as **Exhibit 1**; Dennis Dep. 109:20-111:11, attached as **Exhibit 2**; Affidavit of Undersheriff Cochran at ¶¶ 6 – 7, attached as **Exhibit 3**.)[3] The July 27, 2016 notice issued to Dennis regarding the conditions of his leave status made clear that Dennis to remain at a pre-arranged place, available by telephone between the hours of 9:00 a.m. to 5:00 p.m. starting the next day, July 28, 2016. (*See* **Exhibit 1**; Dennis Dep. 117:16-119:11). Instead of being arrested immediately, Dennis, through a negotiated discussion between Sheriff FitzSimons, the Park County Sheriff, and his criminal defense counsel, was allowed to turn himself in at the Park County Jail the next day at 7:00 am. (Dennis Dep. 113:16-114:10, 116:2-8). During the intervening evening before his surrender at the Park County Jail, Dennis consumed vodka for a couple of hours. (Dennis Dep. 122:6-

---

termination of an employee for being intoxicated while on the job also compel the conclusion that "[r]easonable accommodation does not extend to accommodating an alcoholic employee's showing up for work under the influence of alcohol." *Flynn*, 868 F.Supp. at 387.

[3] Citations to deposition testimony shall use the following convention for citation to page and lines in a deposition transcript: (page number):(line number)-(line number) or (page number):(line number)-(page number)-(line number).

123:19). Dennis decided to imbibe, despite his supervisor, Commander Mumford's advisement to not drink. (Dennis Dep. 121:16-122:1).

Shortly after surrendering to the Park County Jail at 7:00 am on July 28, 2016, Dennis' breath-alcohol levels were tested by a Portable Breathalyzer Test, or "PBT" device. (Dennis Dep. 139:14-140:2). The Park County Jail conducted three PBT tests on Dennis, all of which revealed significantly high alcohol content levels, demonstrating that he was impaired. (*See* Park County Jail Records, attached as **Exhibit 4** at p.2; Dennis Dep. 142:6-143:5). The first PBT was conducted at approximately 8:03 a.m. and revealed an alcohol content level of 0.107. (**Exhibit 4** at p.2; Dennis Dep. 142:6-143:5). The second was conducted almost an hour later at approximately 8:52 a.m., and revealed Dennis' alcohol content level was 0.082. (**Exhibit 4** at p.2; Dennis Dep. 142:6-143:5). It is undisputed that the third was conducted some time around 10:00 a.m., and revealed an alcohol content level of 0.060. (**Exhibit 4** at p.2; Dennis Dep. 145:20-146:25)

Due to Dennis' alcohol content levels, Park County Jail personnel postponed his scheduled arraignment for 10:00 a.m. that morning until July 29, 2016, when he was ultimately arraigned. (Dennis Dep. 146:14-24, 153:12-14). A corporal from the Park County Sheriff's Office advised Commander Mumford, that the Plaintiff had showed up at their jail with a 0.107 BAC and that the Plaintiff's advisement and arraignment would be postponed. (*See* Affidavit of Commander Mumford at ¶¶ 17 – 19, attached as **Exhibit 5**).This information was passed on to Sheriff FitzSimons and the Sheriff's command staff, who after a series of conferences, concluded that Dennis should be terminated. (*See id.* at ¶¶ 19 – 21).

4829-4878-1701, v. 1

It is further undisputed that Dennis was to be at a pre-arranged location, between the hours of 9:00 a.m. and 5:00 p.m. on July 28, 2016 and available to the SCSO as a condition of his administrative leave. (**Exhibit 1**; Dennis Dep. 117:22-118:16; **Exhibit 5**, Mumford Affidavit at ¶ 34). Because Dennis' alcohol levels were still elevated above the legal impairment limit at 8:03 a.m., 8:52 a.m. and again after 10:00 a.m., it is undisputed that Dennis was under the influence of alcohol while on the job, and that he could not be processed out of the Park County Jail to comply with his condition of paid leave. Dennis' Notice of Termination is based upon those facts. (*See* July 28, 2016 Notice of Termination and Correspondence from Commander Mumford to Dennis, attached as **Exhibit 6**.)

Because it is clear that the ADA affords an employer the latitude to discipline or terminate an employee for being under the influence while on duty, irrespective of the employee's status as an alcoholic, and it is undisputed that Dennis was under the influence while he was to be on duty and available to the SCSO, he cannot establish that he was a "qualified individual" for purposes of his disability discrimination claim under the ADA.

> ii. *Additionally, Dennis's termination was a result of his violation of various provisions of the SCSO Code of Conduct, applicable to all employees.*

Dennis' appearance at the Park County Jail in an intoxicated state occurred while he was on paid leave and violated "conduct" provisions of the SCSO policies, applicable to all employees.

Pertinent here, the ADA permits a covered entity to hold an employee who is an alcoholic "to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if unsatisfactory performance or behavior is related to the []

alcoholism of such employee." 42 U.S.C. § 12114(c)(4). Thus, while the ADA may protect an individual's status as an alcoholic – it is clear that it does *not* protect an alcoholic's alcohol-related misconduct, 42 U.S.C. § 12114(c)(4), especially where that "same behavior, exhibited by a nondisabled employee, would require termination." *See Williams*, 79 F.3d at 1007. As such, "unsatisfactory conduct caused by alcoholism [] does not receive protection under the ADA or the Rehabilitation Act." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998); *Renaud v. Wyo. Dep't of Family Serv.*, 203 F.3d 723, 730 (10th Cir. 2000). "To hold otherwise would force employers to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee." *McKey v. Occidental Chem. Corp.*, 956 F.Supp. 1313, 1319 (S.D. Tex. 1997).

Applying these principles, in *Williams v. Windall*, the Tenth Circuit upheld the trial court's determination that a discharged employee could not establish the second prong of its prima facie case of discrimination under the Rehabilitation Act – that he was otherwise qualified to perform the job functions required of his position. *Williams*, 79 F.3d at 1007. There, it was undisputed that the employee made threats against his supervisor and co-workers, and that making such threats against others was a violation of his employer's performance standards and qualifications. *Id.* Thus, irrespective of the fact that the employee was an alcoholic and that his alcoholism may have contributed to his misconduct, the Tenth Circuit upheld the trial court's grant of summary judgment and conclusion that he was not "qualified" under the Rehabilitation Act because he was removed "in accordance with Air Force regulations which authorize removal as a penalty for threatening another with bodily harm." *Id.*

Similarly, in *Rollison v. Gwinnett County*, the United States District Court for the Northern District of Georgia held that a discharged police officer could not establish the required second prong of a prima facie case of discrimination under the ADA where it was undisputed that he was terminated following off-duty incidents that violated the police department's conduct policies. *See generally,* 865 F.Supp. 1564, 1572 – 73 (N.D. Ga. 1994). There, the termination of the plaintiff was based on numerous off-duty incidents including "repeated involvement in fights, domestic altercations, plus [a] traffic violation, all of which required police response," which were undisputed. *Id.* at 1572. Relying largely on 42 U.S.C. § 12114(c)(4), the court noted that "[w]hile alcohol may have caused the off-duty problems," under the ADA the employer "is allowed to terminate and not accommodate an alcoholic employee, *if* the employee does not perform up to the same standard as all other employees, even if the behavior is related to the employee's alcoholism." *Id.* In granting the department's motion for summary judgment, the court ultimately concluded that if the employee was discharged "it was because of his off-duty behavior, which did not meet the standards of behavior that Gwinnett County require from its police officers," and thus was not a violation of the ADA. *Id.* at 1572 – 73.

Likewise here, Dennis was terminated following conduct that undisputedly violated his employer's conduct policies. As part of his employment with the SCSO, Dennis was aware of and provided a copy of "Policy 0400 – Conduct" of the SCSO, which includes various policies and standards concerning both the on duty and off duty conduct of all employees of the SCSO. (*See generally*, Policy 0400 – Conduct, attached as **Exhibit 7**; Dennis Dep. 92:15-94:20). The policies "establish[] appearance and behavioral standards for the [SCSO]," and "sets standards of conduct for its employees to follow so they will reflect credit upon themselves, the [SCSO], the

profession and Summit County as a whole." (**Exhibit 7** at p.1). Relevant here, the policies and standards, among other things, prohibit all SCSO employees from the following: (i) "consum[ing] alcohol/intoxicants to such a degree that it impairs his/her on-duty performance"; and (ii) an employee shall not consume alcohol for a period of eight hours before going on duty." (**Exhibit 7** at 0400(III)(B)(9)(a)(1), (a)(4)). These policies and standards further require the following of all SCSO Deputies, with respect to off-duty duty conduct:

> Deputies will behave in a manner that does not bring discredit to the SCSO or themselves.
>
> A Deputy's character and conduct off duty must always be exemplary, thus maintaining a position of respect in the community, in which he or she lives and serves. The Deputy's personal life must be beyond reproach.

(**Exhibit 7** at 0400(III)(A)(9)).

It is undisputed that Park County issued a warrant for Dennis' arrest, at which point he was placed on administrative leave with the SCSO and an internal investigation was open. (*See supra* p. 7). As noted above, Dennis agreed that he appeared at the Park County Jail on the morning of July 28, 2016 under the influence of alcohol. (*See supra* pp. 7 – 9). In fact, at the time he appeared at the jail, his alcohol level exceeded 0.10. (*See supra* p. 8). This occurred after Dennis was "given the courtesy of turning himself in on an active warrant so as not to go through the indignity of being arrested by his own colleagues." (**Exhibit 5**, Mumford Affidavit ¶ 36.)

Dennis and the SCSO do not dispute that Dennis' termination is based upon his being impaired while on the job. (Dennis Dep. 225:21-230:10; **Exhibit 5**, Mumford Affidavit ¶¶ 35 – 36; **Exhibit 3**, Cochran Affidavit ¶¶ 7, 14; **Exhibit 6**). It is further undisputed that this conduct violated the SCSO policies and standards concerning on-duty and off-duty conduct. (Dennis Dep. 98:6-99:17; **Exhibit 5**, Mumford Affidavit ¶¶ 35 – 36; **Exhibit 3**, Cochran Affidavit ¶ 14;

**Exhibit 7**.) The ADA expressly permits the SCSO to terminate any employee that violates the SCSO performance and behavior standards, irrespective of whether that unsatisfactory behavior is related to or caused by the employee's alcoholism. *See* 42 U.S.C. § 12114(c)(4). Thus, Dennis cannot establish that he is a "qualified individual" – as required to support a prima facie case of disability discrimination under the ADA, as a matter of law. *See Nielsen*, 162 F.3d at 609 – 10; *Rollison*, 865 F.Supp. at 1572 – 73.

> *b.* *Element 3: Dennis has failed to produce sufficient evidence to establish that he was discriminated against because of his disability.*

In addition to Dennis's inability to establish a triable issue that he was a "qualified individual" for purposes of the ADA, the undisputed evidence in this matter further proves that Dennis cannot prove the third element of a prima facie disability discrimination claim under the ADA – that he was discriminated against *because* of his disability. Although Dennis sets forth two theories of discrimination as the bases for his ADA claim – failure to accommodate and adverse employment action – both claims are foreclosed because Dennis had not disclosed the existence of his disability at the time the decision to terminate was made nor asked for any reasonable accommodation.

> *i.* *Dennis cannot establish that the SCSO denied his request for a reasonable accommodation.*

Sheriff FitzSimons and the SCSO had no obligation to reasonably accommodate Dennis because Dennis never timely disclosed that he had an alcohol related disability. "A public entity cannot know that a modification to its services under the ADA is necessary if it does not first understand that an individual requires such modification *because* he was disabled." *Robertson v. Las Animas Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007). Where the disability is not

obvious, "the individual must inform its employer of the disability before the employer can be held liable under the ADA for failing to provide a reasonable accommodation." *Id.* "This is a 'duty dictated by common sense lest a disabled [individual] keep his disability a secret and sue later for failure to accommodate."' *Id.* Accordingly, where a disability is not known to the claimant or employer prior to a termination or other adverse employment action, a claimant's assertion that his disability was the basis for his dismissal, and that the defendant should have instead provided him reasonable accommodation is insufficient as a matter of law to support an ADA claim. *Davila v. Qwest Corp., Inc.*, 113 Fed. App'x 849, 853 – 54 (10th Cir. 2004).

To that end, before an employer's duty to provide reasonable accommodation can be triggered, the employee must make an adequate request for an accommodation, thereby putting the employer on notice. *C.R. England, Inc.*, 644 F.3d at 1049; *Dewitt*, 845 F.3d at 1315 – 16. However, "retroactive leniency" for misconduct that has already occurred is not a reasonable accommodation under the ADA, and thus a request to be excused from discipline or a "denied request for retroactive leniency cannot support an accommodation claim," as a matter of law. *See Dewitt*, 845 F.3d at 1316 – 18.

In *Dewitt v. Southwestern Bell Telephone Company*, the Tenth Circuit held that a discharged employee's accommodation claim failed as a matter of law where the employee's proffered "reasonable accommodation" was her request to be excused from past misconduct. *Dewitt*, 845 F.3d at 1316. There, the employee was discharged after hanging up on two customers in violation of company policies and her employment agreement. *Id.* at 1305 – 1306. In response to her misconduct, the employee requested that her employer "overlook that she hung up on at least two customers" in violation of the company policies and her employment

agreement. *Id.* at 1316. Her reasonable accommodation claim under the ADA was asserted in response to her employer's failure to do so. *Id.* at 1315 – 16. In upholding the trial court's order granting summary judgment to the defense on the plaintiff's ADA accommodation claim, the court noted that the ADA "does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct – irrespective of whether the misconduct resulted from the employee's disability." *Id.*

In this case, it is undisputed that Dennis did not advise the SCSO that he had an alcohol related disability prior to his termination. In July of 2016, Dennis did not have any diagnosis relating to his alcohol use. He only first received a diagnosis for alcohol use disorder in 2018, after this litigation was commenced. (Dennis Dep. 39:25-40:19). Prior to his date of termination, he did not disclose or share his suspicions that he was an alcoholic to the SCSO despite having a propensity towards binge drinking (Dennis Dep. 41:17-42:3). Even though Dennis enjoyed a close, personal relationship to Sheriff FitzSimons, Dennis never indicated to him that he needed outside help with his drinking. (Dennis Dep. 45:14-18). His first disclosure of having alcohol abuse issues came a few days after his July 28, 2016 termination, during an appeal hearing with Sheriff FitzSimons. (Dennis Dep. 155:2-157:8). During that hearing, Dennis told the Sheriff he had an alcohol problem and that he wanted employee assistance counseling and a chance to return to his job. (*Id.*). The request for counseling and a chance to return to his job is also the reasonable accommodation that Dennis claims is the basis for the Defendant's failure to reasonably accommodate his disability. (Dennis Dep. 208:6-13).

Because Dennis did not request a reasonable accommodation on account of alcoholism at any time prior to his termination, Dennis cannot establish that he was discriminated against by

the SCSO for failure to provide such accommodation as a matter of law. Rather, the undisputed facts here demonstrate that Dennis sought to be excused from discipline that had already been issued, which is per se unreasonable and accordingly cannot serve as the basis for an accommodation claim, as a matter of law.

          *ii.*   *Dennis cannot establish that he was terminated because of his disability.*

For the same reason that dooms his reasonable accommodation theory, Dennis' direct discrimination also fails. Without a prior disclosure of a disability to the SCSO, Dennis cannot establish that his termination was based on his alcoholism.

As set forth above, Dennis must prove that his termination was *based on* his alleged disability. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 – 79 (10th Cir. 2004). "To establish such a causal connection, [the employee] must provide some evidence that her disability was a determining factor in [the employer's] decision to terminate her." *Id.*; *see also Dewitt*, 41 F.Supp.3d at 1017 – 18 ("To establish the latter element, an employee must show a nexus, or 'at least a logical connection' between his disability and the termination.'").

Applying this reasoning, the Tenth Circuit in *Bones v. Honeywell, Inc.* held that the plaintiff failed to make a prima facie case of discrimination where she had produced insufficient evidence to create a genuine issue of material fact that there was any causal connection between the employee's termination and her disability. *Bones*, 366 F.3d at 879. There, the court affirmed the district court's grant of summary judgment because the employee did not disclose her disability prior to being fired. *Id.* Accordingly, the employee's bare testimony speculating that she was fired because of her disability where she had not previously disclosed it to her employer

was insufficient as a matter of law to prove the third element of a prima facie case for discrimination under the ADA. *Id.*

Similarly, in *Davila v. Qwest Corporation, Inc.*, the Tenth Circuit affirmed summary judgment of the plaintiff's ADA claim. 113 Fed. App'x at 854. There, the employee was subject to a final warning of dismissal for interpersonally threatening conduct, which conduct ultimately led to the diagnosis of his bipolar condition. *Id.* Thus, at the time the employee was adversely impacted by being placed in an "employment status vulnerable to termination," neither he nor his employer were aware of his proffered disability. *See id.* Thus, "plaintiff's position [was] that when defendant learned his workplace violence was evidently rooted in a bipolar condition, defendant was required to retroactively excuse any misconduct related to that condition." *Id.* The Tenth Circuit rejected this assertion, affirming the judgment of the trial court that the plaintiff's ADA claims fail as a matter of law, as he could not establish that he was terminated because of his disability. *Id.*

Like the plaintiff in *Davila*, here, and as discussed above, *supra* pp. 15 – 16, it is undisputed that at the time Dennis was terminated – neither he nor the SCSO *knew* of his alleged disability. Accordingly, his dismissal could not have been based on that disability. Rather, Dennis revealed for the first time that he suspected he may suffer from alcoholism *after* the SCSO had already issued the termination notice and requested to be excused from that termination and given another chance. Such a request for retroactive excusal from disability-induced conduct and discipline cannot serve as a basis for an ADA disability discrimination claim where the employer did not even know of the disability at the time the decision to terminate was made. Accordingly, the undisputed facts fail to establish that Dennis was

terminated *because* of his disability – warranting dismissal of his ADA discrimination claim as a matter of law.

## B. **Dennis Cannot Establish a Prima Facie Case of Discrimination Under the Rehabilitation Act.**

Dennis' Rehabilitation Act claims can fare no better than his ADA claims as those claims and the standards applied to them by courts construing the statutory language of the two statutes mirror each other.

### 1. Burden of Proof and Elements.

The Rehabilitation Act prohibits covered entities from discriminating against an "otherwise qualified individual with a disability." 29 U.S.C. § 794(a). Similar to ADA claims, in order to sufficiently establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff bears the burden of proving each of the following elements, by a preponderance of the evidence: "(1) that [he] is disabled under the [Rehabilitation] Act; (2) that he would be 'otherwise qualified' to participate in the program; (3) that the program receives federal financial assistance; and (4) that the program has discriminated against [him]." *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).

The standards for employment discrimination are the same under both the Rehabilitation Act and the ADA. *Winston v. Ross*, 725 Fed. App'x 659, 663 (10th Cir. 2018) (unpublished). The Rehabilitation Act provides that the standards to be applied in employment discrimination cases brought under the Rehabilitation Act "shall be the standards applied under Title I of the [ADA]." 29 U.S.C. § 794(d); *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009).

### 2. Elements that Cannot be Proven by Plaintiff.

4829-4878-1701, v. 1

Because the provisions of the Rehabilitation Act involve the same substantive standards as the ADA and are to be analyzed together with the ADA, *see Miller ex rel. S.M.*, 565 F.3d at 1245, Dennis's Rehabilitation Act claim similarly fails – as he has failed to set forth sufficient evidence to establish a genuine issue of triable fact as to either the second or third required prongs of his claim – (1) that he was "otherwise qualified" as defined by the Rehabilitation Act, and (2) that he was discriminated against *because* of his disability.

> a. *Element 2: Dennis has failed to produce sufficient evidence to establish that he was "otherwise qualified" under the Rehabilitation Act.*

For purposes of the Rehabilitation Act, courts have defined the phrase "otherwise qualified" as one who is able to meet a program's requirements in spite of his handicap. *See, e.g.*, *Wilkerson v. Shineski*, 606 F.3d 1256, 1263 (10th Cir. 2010) (citing 29 U.S.C. § 794(a)); *see also Little v. F.B.I.*, 1 F.3d 255, 257 (4th Cir.1993). Employers are permitted to "set skill, experience, education, and other job related requirements" for the employment position. *Wilkerson*, 606 F.3d at 1263. Thus, where an employee has failed to established that he met the minimum requirements of the employment position, summary judgment was appropriate – as that employee "was not 'otherwise qualified'" for the position in question as a result. *Id.* at 1263 – 66 (holding that overweight boiler plant worker could not establish that he was "otherwise qualified" for position for purposes of Rehabilitation Act claim where he failed to meet the position's minimum physical requirements and safety standards).

Like the ADA, the Rehabilitation Act allows employers to terminate an employee for alcohol related misconduct. The Rehabilitation Act permits an employer to terminate its employee "on account of egregious misconduct, irrespective of whether that employee is

handicapped," as such individual was not "otherwise qualified" to perform their job functions at the time in question. *See Little*, 1 F.3d at 259. The statutory language of the Rehabilitation Act further "removes unsatisfactory conduct caused by alcoholism from its purview, stating that the term 'individual with a disability' . . . does not include any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or who employment, by reason of such alcohol abuse, would constitute a direct threat to property or the safety of other." *Nielsen*, 162 F.3d at 609 (quoting 29 U.S.C. § 706(8)(C)(v), now located at 29 U.S.C. § 705(20)(C)(v)). The legislative history further supports this read of the Rehabilitation Act, noting that "'while an alcoholic or drug addict may not be denied services or disqualified from employment solely because of his or her condition, the behavioral manifestations of the condition may be taken into account in determining whether he or she is qualified." *See* 42 Fed. Reg. 22,686 (1977).

Accordingly, federal courts have held that an employee terminated as a result of alcohol-related misconduct, not because of his or her alcoholism or status as an alcoholic, could not establish a prima facie case for discrimination under the Rehabilitation Act. *See Williams*, 79 F.3d at 1007; *Little*, 1 F.3d at 259. In *Little*, the Fifth Circuit upheld the district court's grant of summary judgment to the FBI on a discharged agent's Rehabilitation Act claim where that FBI agent was fired for being intoxicated while on duty, and the standards applicable to FBI agents required that all agents be "mentally and physically fit for duty at all times." *Little*, 1 F.3d at 259. Likewise, in *Williams*, the Tenth Circuit affirmed summary judgment for the employer, the Air Force, on a disability discrimination Rehabilitation Act claim where the terminated, alcoholic employee had threatened his supervisor and coworkers in violation of Air Force regulations

prohibiting threatening others. *Williams*, 79 F.3d at 1007. In both cases, the Circuit Courts explained that failure to adhere to the employers' conduct policies was the basis for the employees' termination – irrespective of their status as alcoholics – and that alcohol-related misconduct that violates an employers' policies prevents an employee from being "otherwise qualified" to meet his employers' requirements for job performance and behavior. *Little*, 1 F.3d at 259; *Williams*, 79 F.3d at 1007.

As discussed above, *supra* pp. 7 – 9, 11 – 13, Dennis was terminated for engaging in misconduct that undisputedly violated his employer's conduct policies. Dennis agreed that he appeared at the Park County Jail on the morning of July 28, 2016 under the influence of alcohol and further agreed that he was impaired at a time that he was required to be on paid leave and available to the SCSO.

Because it is undisputed that Dennis' conduct failed to comply with the SCSO policies and standards concerning behavior and performance of deputies, he cannot establish that he met his employer's work requirements and was thus "otherwise qualified" for the job – as required to support a prima facie case of disability discrimination under the Rehabilitation Act.

     b. *Element 4: Dennis has failed to produce sufficient evidence to establish that he was discriminated because of his disability, as required by the Rehabilitation Act.*

         i. *Dennis cannot establish that he requested a plausibly reasonable accommodation.*

As noted above, Dennis has asserted both failure-to-accommodate and adverse employment action theories as support for the discrimination prong of both his ADA and Rehabilitation Act claims. To prevail on a failure-to-accommodate theory under the Rehabilitation Act, a plaintiff must establish that he "requested a plausibly reasonable

accommodation." *Sanchez v. Vilsack*, 695 F.3d 1174,1177 (10th Cir. 2012). Courts addressing this prong of the Rehabilitation Act analysis apply the same standards applicable to ADA claims. *See Hawkins v. Smith*, 46 F.Supp.3d 1175, 1183 n.6 (N.D. Okla. 2014) (citing *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 Fed. App'x 909, 919 (10th Cir. 2013)). As discussed *supra* at pp. 13 – 15 above, a retroactive request for leniency cannot support a failure-to-accommodate claim, as a matter of law. *See Dewitt*, 845 F.3d at 1316 – 18; *Davila*, 113 Fed. App'x at 853 – 54. Rather, a request for accommodation must be made by the employee before the employer can be held liable for failure to accommodate. *See Dinse v. Carlisle Foodservice Prod. Inc.*, 541 Fed. App'x 885, 890 (10th Cir. 2013) (unpublished).

In this case, it is undisputed that Dennis' request for a reasonable accommodation occurred days after his termination on July 28, 2016. (Dennis Dep. 41:17-42:3, 45:14-18). His first disclosure of having alcohol abuse issues came a few days after his July 28, 2016 termination, during the appeal hearing with Sheriff FitzSimons at which time he requested employee assistance counseling and a chance to return to his job. (Dennis Dep. 155:2-157:8, 208:6-13). Because Dennis did not request a reasonable accommodation from Sheriff FitzSimons or the SCSO any time prior to his termination, Dennis cannot establish that he was discriminated against by the SCSO for failure to provide such accommodation as a matter of law.

   ii. *Dennis cannot establish that the SCSO's termination of his employment was not solely by reason of his stated disability.*

Like his ADA claim, his direct discrimination claim under the Rehabilitation Act is doomed because the SCSO did not knew Dennis had an alcohol related disability prior to his termination.

Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified handicapped individual in the United States . . . shall, *solely by reason of his handicap*, be . . . subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §794 (emphasis added). While the Tenth Circuit has not specifically addressed the impact of an employee's failure to disclose his or her disability in terms of causation under the Rehabilitation Act, case law under the ADA discussed above, *supra* at pp. 16 – 17, is instructive.

Moreover, other federal court decisions interpreting the language of the Rehabilitation Act have clearly found no causation where an employee failed to disclose his or her disability prior to the allegedly discriminatory action. To that end, federal courts applying the language of the Rehabilitation Act have held that "for this causal link to be shown the employer must have acted with an awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability." *Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 896 – 97 (D.C. Cir. 1998). As such, courts have concluded that plaintiffs could not establish that they were discriminated against because of their stated disabilities, if the employer lacked awareness of that disability at the time the allegedly discriminatory action took place, under both the ADA and the Rehabilitation Act. *See, e.g.*, *Crandall*, 146 F.3d at 897 – 98 (holding that employee could not establish Rehabilitation Act claim as a matter of law where he "had not disclosed the disability to his employer before he was terminated"); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (affirming summary judgment of discharged employee's disability claim under the ADA where employer had not been informed of disability at the time of termination). Applying this logic, the Seventh Circuit in *Hedberg v. Indiana Bell Telephone Company* explained as follows:

> The ADA hardly requires that merely because some perceived tardiness and laziness is rooted in disability, an employer who has not been informed of the disability, and who has no reason to know of the disability, is bound to retain all apparently tardy and lazy employees on the change that they may have a disability that causes their behavior.

*Hedberg*, 47 F.3d at 934.

As previously discussed above, *supra* pp. 15 – 16, because it is undisputed that at the time of Dennis' termination on July 28, 2016 – neither he nor the SCSO *knew* of his alleged disability, his dismissal could not have been based on that disability. As discussed above, Dennis failed to reveal that he suspected he may suffer from alcoholism until *after* the SCSO had already issued the termination notice. Accordingly, the undisputed facts fail to establish that Dennis was terminated *because* of his disability – also justifying dismissal of his disability discrimination claim under the Rehabilitation Act as a matter of law.

## CONCLUSION

In light of the foregoing, Plaintiff cannot establish a prima facie case of disability discrimination under either the ADA or the Rehabilitation Act. Accordingly, Defendant respectfully requests this Court GRANT summary judgment to Defendant on both of Plaintiff's claims.

4829-4878-1701, v. 1

Respectfully submitted this 14th day of January, 2019.

BERG HILL GREENLEAF RUSCITTI LLP

*s/  Josh A. Marks*

_____
Josh A. Marks
1712 Pearl Street
Boulder, CO  80302
Phone:  (303) 402-1600
Fax:  (303) 402-1601
Email:  jam@bhgrlaw.com
*Attorney for Defendants*

4829-4878-1701, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2019, I electronically filed the foregoing

**DEFENDANT'S SUMMARY JUDGMENT MOTION** with the Clerk of the Court using the

CM/ECF system which will send notification to such filing to the following e-mail addresses,

Ralph Lamar
8515 Braun Loop
Arvada, CO  80005
ralphlamar@ymail.com

*s/ Cheryl Stasiak*
_____
Cheryl Stasiak

4829-4878-1701, v. 1