IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-CV-0128-MSK-STV

JARED DENNIS,

    Plaintiff,

*v.*

JAIME FITZSIMONS,

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (**# 30**), the Plaintiff's Response (**# 34**), and the Defendant's Reply (**# 37**). For the reasons that follow, the Motion is granted.

### I.    JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

### II.    BACKGROUND[1]

Plaintiff Jared Dennis is an alcoholic who was employed as a deputy in the Summit County Sheriff's Office (SCSO). The named Defendant is the Sheriff, Jaime FitzSimons. On July 27, 2016, Deputy Dennis' wife filed criminal charges against him in Park County. As a consequence, the SCSO placed Deputy Dennis on administrative leave pending an internal affairs investigation. As a condition of such leave, Deputy Dennis was instructed that "You are

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to Deputy Dennis, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

to remain at a pre-arranged place, available by phone, beginning Thursday, July 28, 2016 from [9:00 a.m.] to [5:00 p.m.]," and that "you are to call on and off duty daily" with his Commander, Lesley Mumford.

With the agreement of Park County officials, Deputy Dennis was permitted to voluntarily appear at his arraignment at 7:00 AM on July 28, 2016. On the night before the arraignment, Deputy Dennis and another SCSO deputy, Sergeant Robert Pearce, got drunk. The following morning, Sergeant Pearce drove Deputy Dennis to the Park County Sheriff's Office for the arraignment. Deputy Dennis was given a breathalyzer test as part of the standard intake process; it revealed a blood-alcohol level of 0.107, above the legal limit. Deputy Dennis remained at the Park County Sheriff's Office for some time thereafter and was given additional breathalyzer tests. At approximately 9:00 AM, his blood-alcohol level registered at 0.082, still well above the legal limit for intoxication. At 10:45 AM, his level was 0.060, still above the limit for intoxicated driving.[2] At that point, due to his continuing intoxication, the Park County Jail rescheduled Deputy Dennis' arraignment until the next day. Believing that he was not required to contact Commander Mumford until after the arraignment was concluded, Deputy Dennis took no further action that day and did not contact Commander Mumford.

Not having heard from Deputy Dennis as expected, Commander Mumford made the decision to terminate Deputy Dennis' employment. Shortly thereafter, Commander Mumford

---

[2] Deputy Dennis testified at his deposition that he has some doubts about the accuracy of these readings. But the record is undisputed that the readings were provided to the SCSO and that it relied upon those readings in making its decisions regarding Deputy Dennis. In that sense, the accuracy of the readings is largely irrelevant. So long as the SCSO *subjectively* believed the readings were accurate — and Deputy Dennis has not come forward with evidence to suggest that the SCSO disbelieved the readings — it was entitled to base its employment decisions on those readings whether they were actually accurate or not. *See generally DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970–71 (10th Cir. 2017).

delivered a letter of termination to Deputy Dennis at the Park County Jail. The letter stated Deputy Dennis had violated four SCSO policies:

- Conduct 400(III)(A)(9) Private Life: Deputies will behave in a manner that does not bring discredit to the SCSO or themselves; (this provision also requires off-duty conduct to be "exemplary" and "beyond reproach" (**# 30-7 at 2**, Conduct 400(III)(A)(9).)

- Conduct 400(III)(B)(9)(a)(1) Alcohol Use: An employee shall not consume alcohol to such a degree that it impairs his on-duty performance;

- Conduct 400(III)(B)(9)(a)(4) Alcohol Use: An employee shall not consume alcohol for a period of eight hours before going on duty[3];

- Internal Affairs 410(VI)(A) Internal Affairs investigative proceedings are confidential personnel issues and shall not be discussed with anyone other than as part [sic] of the official investigation.

(**# 30-6 at 1–2**.) Termination of Deputy Dennis' employment was effective immediately. Deputy Dennis appealed to Sheriff FitzSimons, but the Sheriff upheld the termination decision.

In his Complaint (**# 1**), Deputy Dennis identifies two claims, but the Court breaks them into four claims: (1) discrimination in violation of the Americans with Disabilities Act (ADA) based on his termination, (2) discrimination in violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794) based on his termination, (3) discrimination in violation of the ADA based on a failure to accommodate his disability, and (4) discrimination in violation of the Rehabilitation Act based on a failure to accommodate his disability. Sheriff FitzSimons moves for summary judgment (**# 30**) on all claims.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if

---

[3] Deputy Dennis disputes that he consumed alcohol within eight hours of his scheduled 9:00 AM shift time, contending that he stopped drinking at approximately 11:00 or 11:30 PM the night before. This dispute does not materially affect the analysis herein.

no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producers Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

Deputy Dennis' four claims come in two sets: discrimination on the basis of disability arising out of Deputy Dennis' termination, and failure to accommodate a disability, each in violation of both the ADA and Rehabilitation Act. The legal analysis for claims brought under the ADA and Rehabilitation Act is the same. *Reg'l Econ. Cmty. Action Program Inc. v. City of Middletown*, 294 F.3d 35, 48–49 (2d Cir. 2002).

### A. Termination

When there is no direct evidence of discrimination, the Court applies the familiar burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973), which applies to discrimination claims under the ADA and Rehabilitation Act. *See Davidson v. Am. Online Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003); *Williams v. Widnall*, 79 F.3d 1003, 1005 (10th Cir. 1996). Under this framework, a plaintiff must first make out a *prima facie* case of discrimination as described below. If he is successful, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment actions. If the employer proffers such a reason, the burden shifts back to the plaintiff to ultimately show that the stated reasons are merely a pretext for discrimination. *McDonnell-Douglas*, 411 U.S. at 804–05.

To make out a *prima facie* case, a plaintiff must establish that (1) he is a "qualified

5

individual with a disability," that is, he was qualified, with or without reasonable accommodation, to perform the essential functions of his job; (2) he suffered an adverse employment action; and (3) there is evidence that his employer took the adverse action against him because of his disability. *EEOC v. C.R. England Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011). Sheriff FitzSimons argues that Deputy Dennis cannot establish two elements of the *prima facie* case — he is neither a qualified individual within the meaning of the ADA, nor is there any connection between his termination and his disability.

Turning first to the question of whether Deputy Dennis is a qualified individual with a disability, it is generally recognized that alcoholism can constitute a disability entitling the employee to protection under the ADA and Rehabilitation Act. *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1185 (10th Cir. 2011). Thus, the Court will treat Deputy Dennis as a qualified individual with a disability. There is also no dispute that Deputy Dennis' termination constituted an adverse employment action.

The more difficult question is whether Deputy Dennis has come forward with evidence that his termination resulted from his *disability*, rather than his *conduct*. As the Tenth Circuit explained in *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 (10th Cir. 1998), when the disability at issue is alcoholism, the ADA and Rehabilitation Act draw a distinction between "having a disability" and "disability-caused misconduct." Thus, "unsatisfactory conduct caused by alcoholism . . . does not receive protection under the ADA or the Rehabilitation Act".[4] *Id.* at 609 (citing 42 U.S.C. § 12114(c); 29 U.S.C. § 706(8)(C)(v)).

---

[4] On the other hand, "the mere status of being an alcoholic . . . may merit such protection." *Id.* Perhaps one way to conceptualize the distinction is to understand that alcoholics are protected by the ADA and Rehabilitation Act when they are sober, but not when they are under the influence of alcohol (or, at the very least, not when they are under the influence of alcohol during work hours).

It is undisputed that the SCSO based its decision to terminate Deputy Dennis' on the fact that he reported for his arraignment in an intoxicated state. Thus, there is no dispute that SCSO's decision arose from his unsatisfactory *conduct* on the morning of July 28, not from his abstract *status* as an alcoholic.[5] As noted, the ADA and Rehabilitation Act do not extend protection to actions of alcohol-influenced misconduct, even if the employee's alcohol use is related to the disability of alcoholism. Accordingly, Deputy Dennis has not come forward with evidence that indicates that his termination was based on his status as a disabled person (as opposed to his conduct). This entitles Sheriff FitzSimons to summary judgment on Deputy Dennis' termination claims.

Deputy Dennis argues that the SCSO did not take similar disciplinary action against other employees who engaged in alcohol use in close proximity to their duties, specifically Sergeant Pearce, who consumed alcohol with him the night before the arraignment and who drove him to the arraignment, and an unnamed deputy assigned to the Summit County Jail, who drove after drinking while off duty but was only issued a warning. Arguably, evidence that an employer treated similarly-situated individuals differently can give rise to an inference that its actions towards the plaintiff are discriminatory. *Clincy v. Transunion LLC*, 684 F. App'x 680, 684 (10th Cir. 2017). But Deputy Dennis has not come forward with sufficient evidence to demonstrate that he was indeed similarly situated to either Sergeant Pearce or the unnamed Deputy. The undisputed fact that Sergeant Pearce and Deputy Dennis were drinking together the night before the arraignment does not establish that Sergeant Pearce *remained* intoxicated

---

[5] The distinction made between "status" and "conduct" obviates the need to address Deputy Dennis' contention that SCSO officials knew, based on various prior instances in which he exhibited alcohol-fueled misconduct, that he was an alcoholic. Even assuming the SCSO was fully aware of Deputy Dennis' status as an alcoholic, it was free to take action against him based on his conduct.

when he drove Deputy Dennis to the arraignment the next morning.  Indeed, Deputy Dennis testified that he did not believe that Sergeant Pearce was intoxicated on the morning of the arraignment.  Thus, Sergeant Pearce is not similarly situated to Deputy Dennis, who was conclusively shown to have still been under the influence of alcohol during and after the scheduled time for the arraignment.

As to the unnamed Deputy (referred to in depositions as "Deputy X"), the record reflects that Lieutenant Gilbert of the SCSO had received reports that Deputy X, while off-duty, had driven drunk on several occasions.  Lieutenant Gilbert asked Deputy X about these reports and Deputy X confessed that he had, on some occasions, driven drunk.  Lieutenant Gilbert inquired whether Deputy X might have an alcohol problem and offered help if he did, but Deputy X denied having a problem, stating that "I just made some bad choices."  Lieutenant Gilbert then "counsel[ed him] on the repercussions of drinking and driving in our profession," and Deputy X stated that he "would not drink and drive again."

The Court finds that Deputy X's situation is not sufficiently similar to Deputy Dennis' such that the Court could infer that Deputy Dennis' situation was instead motivated by discrimination against his status as an alcoholic.  Most notably, Lieutenant Gilbert's counseling with Deputy X expressly included an offer to provide help to Deputy X if he believed he had an alcohol problem — *i.e.*, if he was an alcoholic — suggesting exactly the opposite inference than Deputy Dennis asks the Court to draw from that situation.  Moreover, the record does not reflect that Deputy X and Deputy Dennis were otherwise similarly situated in all relevant respects.  *Clincy*, 684 F. App'x at 684.  They did not report to the same supervisor, and there is

no indication that Lieutenant Gilbert is in the same line of authority as Commander Mumford.[6] They were not share similar employment histories — at most, the events involving Deputy X occurred during the "early stages of his employment" with the SCSO, as he was "a new employee just starting with us," and his relatively new status was one of the reasons that the SCSO chose to apply more lenient discipline to him. Deputy Dennis, on the other hand, testified that he had "been a cop for 14 years" as of the events herein, suggesting that the SCSO could consider him to be more culpable for his actions. Finally, the record reflects that the SCSO specifically considered that the allegations against Deputy X involved conduct he engaged in off-duty, were only reported after the fact, and although Deputy X confessed generally to Lieutenant Gilbert, the SCSO had "no immediate ability to investigate this," such as by subjecting Deputy X to blood-alcohol testing. By contrast, Deputy Dennis' situation occurred while he was on-duty[7] in a setting in which he was interacting with fellow law enforcement officers from another jurisdiction, and that his intoxication was immediately and objectively established with breathlyzer testing.[8]

      Accordingly, because the Court finds that Deputy Dennis was not similarly situated to

---

[6] Undersheriff Joel Cochran, who discussed Deputy X's situation with Lieutenant Gilbert, testified that he did not discuss Deputy X's situation with Sheriff FitzSimons.

[7] Deputy Dennis testified that he understood Commander Mumford's instructions to be that he was to contact the SCSO immediately after his arraignment was completed, and that because his arraignment did not occur on July 28 — much less that it was completed — he was not obligated to contact the SCSO on that date. He thus disputes that he was "on duty" during his intoxication on July 28. The Court need not address whether this was a reasonable construction of Commander Mumford's written instructions, because it is clear that SCSO *subjectively* believed that Deputy Dennis was on-duty by 9:00 AM on July 28.

[8] It is also worth noting that Deputy Dennis' situation was further complicated by the fact that his intoxication occurred in conjunction with his arraignment on other pending criminal charges. This suggests that Deputy Dennis' poor judgment occurred in a more serious context than Deputy X's decision to drive home intoxicated after engaging in social activities.

9

Sergeant Pearce and Deputy X, the Court cannot conclude that the different discipline they received permits an inference that the SCSO discriminated against Deputy Dennis because of his status as an alcoholic.

**B.    Failure to Accommodate**

Deputy Dennis also brings a claim for discrimination based on a failure to accommodate his disability.   The ADA provides that an employer is obligated to make any reasonable accommodations that may be necessary to permit a qualified employee with a disability to perform his job.   *Smith v. Midland Brake Inc*., 180 F.3d 1154, 1160–61 (10th Cir. 1999). When a claim of discrimination contends that the employer failed to accommodate the employee's disability, the employee must demonstrate the existence of a facially reasonable accommodation that the employer could (and should) have made; the burden then shifts to the employer to demonstrate that it was unable to provide that accommodation within the terms of the ADA.   *Hennagir v. Utah Dep't of Corr*., 587 F.3d 1255, 1264 (10th Cir. 2009).

The record is undisputed that Deputy Dennis did not request any accommodation until after he was terminated.   In his Response, Deputy Dennis does not address the failure to accommodate claim at all.   Having identified no reasonable accommodation that he requested and that Sheriff FitzSimons refused, the Court finds that Deputy Dennis has failed to come forward with a *prima facie* case of failure to accommodate.   Summary judgment is appropriate for the Sheriff.

## V.    CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (**# 30**) is **GRANTED**.    Judgment shall issue in favor of the Defendant.

Dated this 5th day of September, 2019.

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge